**AUSTIN v. OSBORNE et al.**

No. 5784.

Circuit Court of Appeals, Fifth Circuit.

Feb. 14, 1931.

Rehearing Denied March 11, 1931.

Stanley Boykin and H. C. Ray, both of Fort Worth, Tex. (Boykin & Ray, of Fort Worth, Tex., on the brief), for appellant.

Jos. W. Bailey, Jr., of Dallas, Tex., and Wm. J. Berne, of Fort Worth, Tex. (Bailey, Nickels & Bailey, of Dallas, Tex., and Wm. J. Berne, of Fort Worth, Tex., on the brief), for appellees.

Before BRYAN and FOSTER, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellant brought this suit as receiver of the O. K. Cattle Company, to cancel certain mortgages resting upon its property, alleging that they were without consideration and amounted to "a fictitious increase of indebtedness" of said company in violation of the laws and Constitution of the state of Texas. Quite a number of such transactions were assailed in the bill, but only those affecting the liens of F. C. Osborne and Horace L. Hotchkiss (the latter having since died and his estate being now represented by an administrator) are involved in this appeal. The lower court rejected the demands for cancellation, and recognized as valid the liens of Hotchkiss, as well as a decree formerly rendered in favor of Osborne, foreclosing the mortgages held by him.

Prior to May, 1898, the W. C. Belcher Land & Mortgage Company, hereinafter referred to as the Belcher Company, had been organized and was engaged in the business of financing mortgage loans. In that year it held first mortgages upon three properties, known as the Utt, Farmer, and Maddox ranches, aggregating $45,000 in principal. Foreclosure proceedings were instituted, and certain officers and stockholders of the Belcher Company, on May 25, 1898, organized another corporation, known as the O. K. Cattle Company, hereinafter referred to as the cattle company, which bought in these properties at the sales for the amount of the mortgages, plus $1,000. The principal of the indebtedness was merely assumed, and the money put into the new concern was for the purpose of paying interest, taxes, costs, and other expenses incident to the foreclosure and acquisition of the ranches, as well as the prosecution of its business. The purposes and objects of the cattle company were "the raising, buying and selling of live stock," in which it engaged until about 1923 or 1924. Its affairs were financed largely by the Belcher Company, and were controlled by the same persons who were officers and stockholders of the latter company. The cattle company was credited upon the books of the Belcher Company with the proceeds of property sold and charged with expenditures made in its behalf. In time the Utt and Farmer properties were sold, but the Maddox ranch, being near the city of Fort Worth, was finally platted into city lots, with streets, sidewalks, water, lights, etc., which involved the expenditure of considerable sums of money. The record does not disclose a full and exact account of the amounts received and expended by the

Belcher Company on behalf of the cattle company. However, as heretofore stated, the principal of the original indebtedness assumed was $45,000, bore interest, and taxes upon the property were thereafter paid from 1898 by the Belcher Company until the sale of such portions as were disposed of many years later, as well as upon that which was still owned at the time of this suit. When the mortgages complained of in this suit were given, so far as we are able to determine from the record, the cattle company owed the Belcher Company considerable money.

It is contended by the appellant that the former, having been authorized by its charter to deal only in live stock, could not, nor could the Belcher Company for it, engage in dividing its property up into city lots for the purpose of sale. We think this position untenable. Of course it could not become a real estate dealer in the sense of buying and selling such property generally, but it was certainly entitled to acquire lands for the purpose of carrying on its live stock business, and, when this was discontinued, to dispose of them to the best possible advantage. If in the judgment of the directors and stockholders this could be done by dividing it into city lots, we see no reason why that course should not have been followed.

In March, 1923, the Belcher Company sold to Horace L. Hotchkiss its debenture bonds, of a series the total of which was $100,000, in the sum of $25,000, and attached thereto was a trustee's certificate, reciting that the Belcher Company, for the payment thereof, had deposited with the trustee, Farmers' & Mechanics' National Bank, "to the extent of par face of outstanding bonds, certain mortgages, liens and other evidences of indebtedness, each of which is certified by said company to said trustee, to be a first lien upon real estate." "Said Mortgage Company may withdraw any securities by substituting others of equal or greater amount and certified as above, or by returning to the trustee a proportional amount of cancelled debentures of the same series. The amount of such securities held by such trustee to be always in excess of the amount of debentures outstanding in said series."

Otherwise the trustee was given full power to collect or sell the securities and generally to protect the interest of the owner of said debenture bonds.

On April 1, 1923, the cattle company executed its mortgage bond in favor of the Belcher Company, secured by a lien upon cer-tain of its lands, in the sum of $16,500, and on the 23d day of said month the Belcher Company transferred the same to the Farmers' & Mechanics' National Bank of Fort Worth, Tex. This mortgage lien was placed as security for the debenture bonds held by Hotchkiss above described, and for which the O. K. Cattle Company had, on April 12, 1923, received credit on the books of the Belcher Company for $25,000. Hotchkiss was not aware of this transfer of the cattle company mortgage lien when it was made, but the same was handled by the trustee in due course. The Belcher Company defaulted in the payment of the debenture bonds, and the mortgage note in question was sold by the trustee and bought in for the account of Hotchkiss on August 20, 1928.

There was substantial evidence tending to show that this mortgage represented a part of the original indebtedness of the cattle company, which had from time to time been renewed or extended upon the properties acquired in 1898, including the Maddox ranch. The lower court so found in rejecting the appellant's demand as to the Hotchkiss mortgage and in discharging his administrator from the receivership with "liberty to force the collection of his debt by sale under the power that is provided in his trust deed, or by suit in court to collect his debt and to establish and foreclose his trust deed line (lien)." The principal testimony offered on behalf of the appellant to dispute this finding was that of an accountant for the receiver, who did not purport to trace through the records of the two companies the entire relations between them over the whole period of thirty years, but who gave his opinion, from partial examinations of those records, that the indebtedness of the cattle company had been paid at the time the mortgages were given. On the other hand, officers and employees of the two companies testified, in substance, and this was corroborated to some extent by documentary and undisputed evidence, that the only money ever paid in on the cattle company's debts was such as was received at its organization for the purpose of paying the accrued charges, such as taxes, costs, interest, etc., against the properties, which had been bought in at foreclosure sales in 1898; that the principal of the mortgage indebtedness had continued through the years with the Belcher Company acting as its financial agent, charging it with all expenditures made on its behalf, and giving credit for all funds received for its account; and, finally, that the money received from the Hotch-

kiss loan went to the cattle company's credit and was not used for the benefit of the Belcher Company.

■ Much is made by appellant of the fact that the officers and stockholders of the two companies were largely the same individuals, and that the O. K. Cattle Company had no bank account; but these circumstances do not alone justify the annulling of the mortgages. The appellant carried the further burden of showing with reasonable certainty that the obligations attacked represented a fictitious increase of indebtedness; that is, it had no reality in so far as the cattle company was concerned.

■ Without finding it necessary to go further into detail as to the evidence, we think it sufficient to say that in our opinion, the record sustains the conclusion of the lower court.

As to the Osborne transaction, he had been dealing with the Belcher Company since about 1917 or 1918, at which time he invested $8,000 in two of its debenture bonds of $4,000 each; and in 1919 purchased two additional bonds of the same character for $5,000 each, making a total of $18,000 so invested. These bonds ran for a period of five years, and the interest thereon was paid. For the first two bonds, amounting to $8,000, in the latter part of 1923, he received in exchange the unmatured mortgage note of the cattle company for that sum, payable to the Belcher Company, which had been indorsed to him, and which is sought to be annulled in this suit. In 1924 he also purchased from the Belcher Company the other mortgage note in controversy here for the sum of $3,500, which was made and transferred in the same manner before maturity, and for which he paid cash, less 2 per cent. commission. What has been said above about the relations between the cattle company and the Belcher Company is equally applicable in this instance; i. e., the former received credit for the proceeds of this loan upon the Belcher Company's books against the indebtedness growing out of their dealings over a period of thirty years.

On May 21, 1927, Osborne filed suit in the court below against the cattle company upon these two notes and for the foreclosure of the mortgages, the cause being No. 513 on the equity docket. An exception was urged on the ground that Osborne being merely a transferee of the notes in which the maker and payee were both citizens of the state of Texas, the federal court was without jurisdiction, since the sole basis therefor was diversity of citizenship. The plea was tried, and on November 10, 1927, judgment was rendered overruling it and holding that, "in taking said notes from the Cattle Company and in selling them, the Belcher Company acted without profit to itself for the accommodation of the Cattle Company and as agent for the Cattle Company; the court further finds it has jurisdiction to hear and determine this case." The cause was put at issue by answer of the cattle company, and on January 9, 1928, Osborne was given judgment for the sums due on the notes and permitting him to foreclose the mortgages.

The receivership of the Belcher Company having, on May 28, 1927, been extended to the cattle company, the receiver on January 11, 1928, entered an appearance in said cause No. 513, and asked for a new trial as to the decree rendered on the merits. On February 27, 1928, appellant had the application for new trial continued until the next term of court. No further action was taken upon this motion. March 23, 1928, the lower court entered an order directing the decree in favor of Osborne upon the notes and mortgage liens be certified to the receivership "for the purpose of being collected as therein ordered." On November 7, 1928, Osborne and others filed in the receivership proceedings motion to vacate an order authorizing the issuance of receiver's certificates for $10,000 in so far as it gave said certificates preference over the prior mortgage liens of said creditors; and on April 29, 1929, the court entered the following order: "Ordered that the cause instituted by the motion of The Springfield Savings Bank; I. H. Burney and Charles F. Osborne against aforesaid Receiver; Boykin & Ray; Ben M. Terrell and the Continental National Bank to vacate Court orders that gave priority to liens held by said defendants over prior existing liens by mortgage owned by said movants, which motion was filed September 7th, 1928, be, and it is consolidated with and made a part of the cause filed in said O. K. Cattle Co., receivership cause by said Receiver, and against The Brattleboro Trust Co., the aforesaid movants, and others.

It is claimed by the appellant that this order was for the consolidation of the motion for a new trial on the merits of the case No. 513, in which Osborne had obtained judgment on his notes, and for the foreclosure of the mortgages, with the present case brought by the receiver for the annulment of these mortgages. However, it is perfectly patent from the order just quoted that this contention is not supported by the record. The motion

for new trial never having been acted upon, and, the court having certified the judgment which it was intended to vacate to the receivership for payment, it must be held to have been overruled or to have "died" upon the docket. Graham v. Swayne (C. C. A.) 109 F. 366.

In defense of the present suit, Osborne filed a plea of res judicata, based upon this judgment on January 9, 1928, but appellant contends that said plea was overruled by the lower court and the matter decided on the merits. That portion of the decree appealed from affecting the Osborne mortgage we quote as follows:

"The indebtedness, and the mortgage liens which secure same, owned by Chas. F. Osborn, are valid and subsisting debts and liens. Said indebtedness is evidenced by a valid and subsisting decree rendered by this Court on January 9, 1928, on the equity side of this Court, in cause numbered 513 on the equity docket, in favor of said Osborn and against the O. K. Cattle Co.; W. C. Austin in his capacity of receiver of the W. C. Belcher Land Mortgage Co.; and Andrew Reed; and in said decree the mortgage liens that secure said indebtedness on the lands described in said mortgages were validly established and foreclosed as valid and subsisting liens on the lands described in said mortgages and in said decree. All of said decree is binding on W. C. Austin in his capacity of receiver of the O. K. Cattle Company.

"The indebtedness and the mortgage lien which secures it, owned by Horace L. Hotchkiss at his death and now owned by aforesaid administrator of his Estate, is a valid and subsisting debt and lien. Said indebtedness, and the mortgage lien which secures it on the lands described in said mortgage, are fully described in the pleadings of said Hotchkiss on file herein. Said indebtedness, at this date, amounts to the sum of twenty-six thousand, seven hundred, twenty-four dollars and twenty-four cents, with interest thereon from this date at the rate of ten per cent. per annum."

"Second. Said Chas. F. Osborn is freed and discharged from the receivership suit of the O. K. Cattle Co. and he is at liberty to collect his debt, and to enforce his debt and lien without being in any way limited, affected, or hindered, by said receivership suit."

"It appearing that, first: By an order made and entered in aforesaid suit No. 513, on March 23rd, 1928, the judgment in Osborn's favor theretofore rendered on January 9, 1928, was directed to be certified to aforesaid receivership suit to be collected as therein ordered; and second; There is no equity for the aforesaid bank or for the Estate of the O. K. Cattle Co. and the said receiver thereof in either of the two parcels of land described in the judgment in said suit No. 513, and, therefore, said receivership suit should not be put to the expense of enforcing said judgment in suit No. 513 and selling said lands, but that said lands should be sold in said suit No. 513 under an order of sale issued in that suit: It is therefore

"Ordered that said suit No. 513, insofar as the collection of the judgment rendered therein was certified to this Court in this, the O. K. Cattle Co. suit, be remanded and re-transferred to said suit No. 513; and order of sale do issue in said suit No. 513 to enforce the judgment rendered therein; the lands described in said judgment be sold under said order of sale as though said order as to said certification had not been made and that an order of sale had issued at the time said order of certification was made."

From this it is clear that the lower court, although it did not say expressly that the plea of res judicata was sustained, accomplished that identical result by the language used and the disposition made of the case. In view of the situation thus disclosed, we agree with the court below that the matter was foreclosed by the judgment of January 9, 1928, and the appellant could not ignore that decree by collaterally attacking it with a suit to annul the mortgage liens which it had converted into judgment.

For the reasons assigned, the judgment of the lower court is affirmed.

Affirmed.